■ WALTER SLEZAK et al., Doing Business as DEAN MANOR NURSING HOME, Petitioners, v. HOLLIS S. INGRAHAM, as Commissioner of Health of the State of New York, et al., Respondents.— Proceeding pursuant to article 78 of the CPLR to review a determination of the respondent State Commissioner of Social Services, dated December 21, 1972, which, with respect to petitioners' nursing home at 2 Whitney Street, City of White Plains, and after a hearing, refused to grant petitioners " a waiver of the relevant provisions of the Life Safety Code of the National Fire Protection Association (21st Ed., 1967) " and to certify petitioners " as a provider of skilled nursing home care" under the State "Medicaid" program established under title XIX of the Federal Social Security Act (U. S. Code, tit. 42, § 1396a *et seq.*). Determination confirmed, without costs (*Matter of Miramichi Nursing Home* v. *Lavine,* 42 A D 2d 570). The stay granted in the order to show cause of the Special Term, Westchester County, dated January 5, 1973, instituting this proceeding, which stay is deemed a stay of all action by respondents in furtherance of the determination under review, shall be deemed in effect and continued until four months after entry of the order to be made hereon, and for a further period, conditionally, as follows: 1. If, prior to the expiration of the four-month con-

tinuation of the stay, petitioners shall (a) complete the "Specified Corrections" hereinafter set forth and (b) submit to the respondent State Commissioner of Social Services a written application for a waiver and a continued certification as providers of skilled nursing home care, based upon proof of completion of the "Specified Corrections", the stay shall be further continued pending determination by said commissioner of said application, which application we direct shall be granted by him upon ascertainment that the "Specified Corrections" have in fact been made. 2. The Specified Corrections are as follows: (a) Install an automatic sprinkler system throughout the facility in accordance with section 10–234 of the Life Safety Code (21st ed., 1967); (b) Install illuminated exit signs; and (c) Install wired glass in the windows of any interior stairwell metal sash doors that do not already contain wired glass — all as recommended by Clarence J. Winquist at the hearing. Petitioners are operators of one of the "Maxwell" nursing homes (*Maxwell* v. *Wyman*, 458 F. 2d 1146) which were originally decertified by the State Department of Social Services at the end of 1971 for failure to comply with the requirements of the Life Safety Code of the National Fire Protection Association as required by title XIX of the Social Security Act (U. S. Code, tit. 42, § 1396a, subd. [a], par. [28], cl. [F], subd. [i]; Code of Fed. Reg., tit. 45, § 249.33, subd. [a], par. [1], cl. [vii]). (See *Matter of Maxwell* v. *Lavine,* 41 A D 2d 346.) By Federal court action, however, these decertifications were stayed pending hearings concerning whether a waiver of the applicable sections of the Life Safety Code should be granted (*Maxwell* v. *Wyman, supra*). Waiver is allowed where unreasonable hardship is shown and the waiver will not adversely affect the health and safety of the patients (U. S. Code, tit. 42, § 1396a, subd. [a], par. [28], cl. [F], subd. [i]). We are of the opinion that there was substantial evidence that petitioners were violating sections 10–1322 and 10–2341 of the Life Safety Code in that their building was not of at least two-hour fire-resistive construction and did not have an automatic sprinkler system. Under the circumstances, a waiver was needed (see *Kruger* v. *Ingraham,* 42 A D 2d 983) and, on the evidence presented at the hearing, the Commissioner of Social Services properly concluded that (as the facility is presently constituted) petitioners had failed to establish that a waiver would not adversely affect the health and safety of the patients (*Matter of Miramichi Nursing Home* v. *Lavine,* 42 A D 2d 570, *supra*). However, we note that the facility has been continuously licensed as a nursing home since 1947. It is protected by an automatic heat detection system with a coded alarm. The alarm alerts the local Fire Department that an emergency is emanating from this nursing home, necessitating extra men and equipment. The heat detection alarm is also sounded internally and can be heard for a number of blocks from the home. The White Plains Fire Department is all-professional and maintains a firehouse within two blocks of the home and the response time of this fire station is two minutes. There are no Fire Department violations outstanding. Petitioners adduced extensive evidence of other fire protection systems and devices. Clarence J. Winquist, a recognized fire protection engineer, testified that the home could be brought into compliance with intent of the Life Safety Code by (a) installation of a complete automatic sprinkler system with an alarm connected to the Fire Department and (b) certain other (minor) corrections (see the above-mentioned "Specified Corrections"). At the close of the hearing, petitioners' counsel stated that petitioners are prepared to install a sprinkler system if that would result in a waiver of the alleged two-hour fire-resistive Life Safety Code defect and that they would do "whatever anyone who is qualified can tell them what it is they want them to do"; that petitioners did not

install a sprinkler system to date because the State did not answer their request for "modifications and exceptions"; and that in fact on July 16, 1971 the State wrote them that the structure lacked two-hour fire-resistivity and that this defect was not waiverable, i.e., that there was nothing that could be done. We note that petitioners' current State Health Department operating certificate contains the Regional Health Commissioner's endorsement that the home is in substantial compliance with standards. Further, the State Hospital Code, which took effect in 1966, does not mandate a sprinkler system. Subdivision (1) of section 711.5 thereof states that "Each existing nursing home shall have a satisfactory sprinkling and/or a fire detecting system with an alarm connection installed in a manner acceptable to the department" (10 NYCRR 711.5, subd. [1]). It is thus clear that although the determination under review must be confirmed, the facility as presently constituted does meet the standards of the State Health Department with respect to non-Medicaid patients. Under all the circumstances, in the interests of justice, we are granting a limited continuation of the stay in order to afford petitioners an opportunity to promptly make those Life Safety Code corrections which can reasonably be made, i.e., the above-mentioned "Specified Corrections"—which, if originally expressly and clearly required by respondents of petitioners, might have obviated the hearing which was held and these legal proceedings. Rabin, P. J., Hopkins, Munder, Latham and Shapiro, JJ., concur.